**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN WURST,<br><br>  Plaintiff,<br><br>  v.<br><br>ZAGG INC, CHERYL A. LARABEE, CHRIS AHERN, DAN MAURER, SCOTT STUBBS, MICHAEL BIRCH, RON GARRIQUES, and EDWARD TERINO,<br><br>  Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

Plaintiff Karen Wurst ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.      This is an action against ZAGG Inc ("ZAGG" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of ZAGG by Zephyr Parent, Inc.

1

("Parent") and Zephyr Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Parent. Parent and Merger Sub are indirectly controlled by Evercel, Inc. and its co-investors (collectively, "Evercel").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New Jersey, including through the sale of its products at various locations in the State.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of ZAGG's common stock.

7. Defendant ZAGG, together with its subsidiaries, designs, manufactures, and distributes mobile tech accessories for smartphones, tablets, smartwatches, and other mobile

technology in the United States, Europe, and internationally. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq under the ticker symbol, "ZAGG."

8. Defendant Cheryl A. Larabee ("Larabee") is Chairperson of the Board of the Company.

9. Defendant Chris Ahern ("Ahern") is Chief Executive Officer and a director of the Company.

10. Defendant Dan Maurer ("Maurer") is a director of the Company.

11. Defendant Scott Stubbs ("Stubbs") is a director of the Company.

12. Defendant Michael Birch ("Birch") is a director of the Company.

13. Defendant Ron Garriques ("Garriques") is a director of the Company.

14. Defendant Edward Terino ("Terino") is a director of the Company.

15. Defendants Larabee, Ahern, Maurer, Stubbs, Birch, Garriques, and Terino are collectively referred to herein as the "Individual Defendants."

16. Defendants ZAGG and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On December 11, 2020, ZAGG and a buyer group led by Evercel announced that they had entered into a definitive agreement pursuant to which the buyer group would acquire all of the issued and outstanding common stock of ZAGG for up to $4.45 per share in cash. More specifically, ZAGG shareholders would receive $4.20 per share in cash upon closing and would be entitled to receive an additional contingent amount of up to $0.25 per share, to be paid if the

Company's Paycheck Protection Program Loan is forgiven and any audit related thereto is satisfactorily completed. The press release announcing the merger states, in pertinent part:

### ZAGG Inc to be Acquired by Buyer Group Led by Evercel, Inc.

December 11, 2020 09:00 ET | **Source:** ZAGG Inc

SALT LAKE CITY, Dec. 11, 2020 (GLOBE NEWSWIRE) -- ZAGG Inc (Nasdaq: ZAGG) ("we," "us," "our," "ZAGG," or the "Company"), a leading global mobile lifestyle company, and a buyer group (the "Buyer Group") led by Evercel, Inc. ("Evercel"), today announced that they have entered into a definitive agreement pursuant to which the Buyer Group will acquire all of the issued and outstanding common stock of the Company for up to $4.45 per share in cash. Stockholders will receive $4.20 per share in cash upon closing and will be entitled to receive an additional contingent amount of up to $0.25 per share, to be paid if the Company's Paycheck Protection Program Loan (the "PPP Loan") is forgiven and any audit related thereto is satisfactorily completed. The transaction is expected to close in the first quarter of 2021. The terms of the agreement, which has been unanimously approved by the Company's Board of Directors, will be submitted for approval of the Company's stockholders.

Chris Ahern, Chief Executive Officer, commented, "We are pleased with the value this transaction delivers to our stockholders and believe this is a positive development for all of our stakeholders. We look forward to continuing to serve our customers through exceptional products and continued industry-leading innovation. We are optimistic about our continued growth and the support that will be provided by Evercel."

"We admire the ZAGG business and its portfolio of leading mobile lifestyle brands," said Daniel Allen, CEO of Evercel. "We are excited to begin a long and successful partnership with the ZAGG team."

**Terms of the Agreement**

Under the terms of the agreement, the Company will file a proxy statement, which shall include the recommendation of the Company's Board of Directors that the Company's stockholders approve the agreement and authorize the transactions contemplated thereby. Closing of the transaction is conditioned upon stockholder approval, clearance under the Hart-Scott-Rodino ("HSR") Antitrust Improvements and other customary closing requirements.

Upon consummation of the merger, $4.20 per share will be immediately paid out to ZAGG stockholders. If the Company's loan forgiveness application is granted, other U.S. Small Business Administration conditions are met, and any related audit

is satisfactorily completed, former stockholders will receive an additional payment of up to $0.25 per share based on the amount of the PPP Loan that is forgiven.

BofA Securities is acting as financial advisor to ZAGG and Latham & Watkins LLP is acting as its legal counsel. Grant Thornton LLP, Lincoln International LLC, and Oppenheimer & Co. Inc. are acting as financial advisors to Evercel and Morgan, Lewis & Bockius LLP is acting as its legal counsel.

\* \* \*

**About ZAGG Inc**

ZAGG Inc (NASDAQ: ZAGG) is a global leader in accessories and technologies that empower mobile lifestyles. The Company has an award-winning product portfolio that includes screen protection, mobile keyboards, power management solutions, social tech, and personal audio sold under the ZAGG®, mophie®, InvisibleShield®, IFROGZ®, Gear4®, and HALO® brands. ZAGG has operations in the United States, Ireland, and China. ZAGG products are available worldwide, and can be found at leading retailers including Best Buy, Verizon, AT&T, T-Mobile, Walmart, Target, and Amazon.com. For more information, please visit the Company's website at **www.ZAGG.com** and follow us on Facebook, Twitter, and Instagram.

**About Evercel, Inc.**

Evercel, Inc. (OTCMKTS: EVRC) is a holding company that acquires and manages high potential businesses which have been limited by their capital structure.

18. On January 7, 2021, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

19. The Proxy Statement, which recommends that ZAGG shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion; (iii) potential conflicts of interest involving BofA; and (iv) the sales process leading up to the Proposed

Transaction.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of Our Board of Directors and Reasons for the Merger; (iii) Opinion of BofA Securities, Inc; and (iv) Certain Financial Projections.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, ZAGG shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning the Company's Financial Projections**

22. The Proxy Statement omits material information concerning the Company's financial projections.

23. The Proxy Statement provides that, in connection with ZAGG's evaluation of a possible transaction, ZAGG management prepared certain non-public, unaudited, stand-alone financial projections (the "Company Projections"), which were reviewed by the Board in connection with its review of the Proposed Transaction. Further, the Board authorized BofA to use the Company Projections to perform financial analyses in connection with its fairness opinion.

24. The Proxy Statement provides a purported summary of the Company Projections.

25. The Proxy Statement, however, fails to disclose the following concerning the Company Projections: (1) all line items underlying (i) Adjusted EBITDA and (ii) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP financial metrics.

26. When a company discloses non-GAAP financial metrics in a Proxy Statement, the company must also disclose all projections and information necessary to make the non-GAAP

metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning BofA's Analyses

29. In connection with the Proposed Transaction, the Proxy Statement omits material

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Jan. 21, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

information concerning analyses performed by BofA.

30. The Proxy Statement fails to disclose the following concerning BofA's "*Selected Publicly Traded Companies Analysis*" and "*Selected Precedent Transactions Analysis*": (1) the individual inputs and assumptions underlying the (i) 2020E EV / EBITDA multiple reference range of 2.30x to 3.90x, (ii) 2021E EV / EBITDA multiple reference range of 3.70x to 7.30x, and (iii) LTM EBITDA multiple reference range of 9.40x to 11.40x; (2) ZAGG's net debt; and (3) the number of fully diluted shares of ZAGG common stock outstanding.

31. The Proxy Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) all line items underlying the standalone, unlevered, after-tax free cash flows ZAGG was expected to generate over the period from January 1, 2021 through December 31, 2024; (2) the terminal values for ZAGG; (3) the individual inputs and assumptions underlying the (i) range of assumed perpetuity growth rates of negative 1.0% to 1.0%, and (ii) discount rates ranging from 10.00% to 12.50%; (4) ZAGG's projected net debt as of December 31, 2020; (5) the Company's debt, cash, and the amount of the PPP Loan that management of ZAGG expected to be forgiven; and (6) the number of fully-diluted shares of ZAGG common stock outstanding.

32. With respect to BofA's "*Wall Street Analysts Price Targets*" analysis, the Proxy Statement fails to disclose: (1) the individual price targets observed by BofA in its analysis; and (2) the sources thereof.

33. The valuation methods, underlying assumptions, and key inputs used by BofA in rendering its purported fairness opinion must be fairly disclosed to ZAGG shareholders. The description of BofA's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, ZAGG

shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction.

34. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving BofA

35. The Proxy Statement omits material information concerning potential conflicts of interest involving BofA.

36. The Proxy Statement fails to disclose whether BofA performed past services for ZAGG, Evercel, Parent, Merger Sub, and/or their affiliates, and, if so, the timing and nature of the services, including the amount of compensation BofA received or expects to receive for providing each service.

37. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

38. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

39. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Proxy Statement provides that ZAGG entered into confidentiality and non-

9

disclosure agreements with potential buyers during the sales process.

41. The Proxy Statement, however, fails to adequately disclose the terms of all confidentiality and non-disclosure agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

42. Without this information, ZAGG shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable ZAGG shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose

such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

47. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

11

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9

promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 21, 2021                                Respectfully submitted,

**HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902

Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*